1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8   TERRELL NAQUAN BAMS,                    NO.  C3:14-CV-05377-BHS-JLW
                        Plaintiff,
9

10        v.
                                           REPORT AND
11   CAROLYN W. COLVIN, Acting              RECOMMENDATION
     Commissioner of Social Security,

12                      Defendant.

13                              BASIC DATA

14   Type of benefits sought:

15        (X) Disability Insurance

         (X) Supplemental Security Income
16
     Plaintiff's:
17
          Sex: Male
18
          Age: 33 at alleged onset date
19
     Principal Disabilities Alleged by Plaintiff:
20
          Mental health and left knee impairments (AR 44).

21   Disability Allegedly Began: September 11, 2009

     Principal Previous Work Experience: Material Handler
22
     Last worked: has not worked since alleged onset
23
     Education Level Achieved by Plaintiff: at least a high school education
24

REPORT AND RECOMMENDATION - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## PROCEDURAL HISTORY

*Overview.*  This is the second time this case has cycled through this court.

Following an initial administrative denial of Plaintiff's claims in 2011, Plaintiff sought relief in this court.  The court reversed and remanded to the Commissioner for further proceedings.  The ALJ conducted a second hearing, and issued a second decision which closely tracked the first decision.  The ALJ found the same Residual Functional Capacity (RFC); found that Plaintiff could perform the same jobs exising in the national economy; and again denied benefits.  Plaintiff has again sought review in this court.

On its first review, this court reversed and remanded because the ALJ had not stated legally valid reasons for rejecting various evidence relating to Plaintiff's mental impairments. Following the second hearing, the ALJ made essentially the same findings as to the same evidence; but augmented in some respects his statement of reasons for those findings.  Plaintiff again challenges the validity of those reasons, while the Commissioner defends them.  The evidence at issue all relates to Plaintiff's mental impairments.  There apparently is no issue as to the ALJ's findings concerning Plaintiff's physical impairments, and their effect upon his RFC. *The focus of the case this time, therefore, is the validity of the ALJ's revised statements of reasons for giving little or no weight to specific items of evidence relating to Plaintiff's mental impairments.*

The prior proceedings in the case, to date, are summarized below.

1.  First Hearing Before ALJ Robert P. Kingsley:

      Date of Hearing: November 2, 2011, via video; hearing transcript AR 30-65

      Date of Decision: January 27, 2012

      Appears in Record at:  AR 7-29

REPORT AND RECOMMENDATION - 2

1       Summary of Decision:

2           Claimant has not engaged in substantial gainful activity since his alleged onset
            date.  He has severe impairments of schizoaffective disorder, depressed type;
3           rule out posttraumatic stress disorder (PTSD); and osteoarthritis of the left knee.
            His impairments, even in combination, do not qualify under the Listings.

4           As to Plaintiff's credibility, his medically determinable impairments could
            reasonably be expected to cause some of the alleged symptoms. But Plaintiff's
5           statements concerning the intensity, persistence and limiting effects of these
            symptoms are not fully credible.  There are significant inconsistencies in
6           Plaintiff's statements.  The medical record does not support his alleged
            limitations.  His ability to participate in treatment programs, his activities of
7           daily living, and his social functioning, are also inconsistent with his claimed
            limitations.  Further, he has received significant benefit from the use of
8           medications.

9           He has the RFC to perform light work, subject to certain limitations.  He cannot
            climb ladders, ropes, or scaffolds.  He can do occasional kneeling or crawling;
10          and frequent climbing of ramps or stairs, balancing, stooping and crouching.
            He must avoid concentrated exposure to cold and hazards.  He is limited to
11          simple, routine, and repetitive tasks with only one to two steps.  He can have
            occasional contact with co-workers and supervisors, but no contact with the
12          public.  He can have few, if any, changes in the work setting.  He can perform
            no tasks involving a manufacturing-style production pace.

13
            He cannot perform his past relevant work, which was as a Material Handler.
14          The testimony of the Vocational Expert identified examples of three jobs
            Plaintiff can perform: Room Cleaner, Mailroom Clerk, and Café Attendant.
15          This establishes he can perform substantial work which exists in the national
            economy, and requires a finding of "not disabled."

16

17   2. Action by Appeals Council Following First ALJ Decision

        Date of Decision: May 22, 2012
18
        Appears in Record at: AR 1-3
19
        Summary of Decision: declined review
20

21   3. Proceedings in this Court Upon Prior Review

        Report and Recommendation by Hon. Brian A.Tsuchida  (AR 1117-1131).
22
        Summary: The ALJ erred in rejecting Dr. Morris's opinions and her determination of
23      Plaintiff's GAF scores, because those were objective and were not based solely upon
        Plaintiff's subjective statements to Dr. Morris.  The GAF score of 30 was extremely
24      low, and the ALJ should not have ignored or rejected its implications without sufficient

REPORT AND RECOMMENDATION - 3

1
2
3
4
5

reasons.  Similarly, the ALJ erred in rejecting the opinions of Drs. Bragg and Trowbridge on grounds that those opinions were based upon Plaintiff's subjective reports.  The ALJ did not state a legitimate reason for rejecting the opinions of  two state psychologists, Drs. Mee and Fligstein, that Plaintiff could only work if afforded adequate breaks to reduce stress.  The ALJ also did not provide any specific and germane reasons for rejecting the lay testimony of Barbara Fraley, NP, DMHP.  On remand, the ALJ should address these issues more fully.  He should also re-evaluate Plaintiff's credibility, in light of the entire record, including new evidence.  The ALJ must also make new determinations of Plaintiff's RFC, and of whether Plaintiff can perform other jobs in the national economy.

6

Order of U.S. District Judge Richard A. Jones, Reversing and Remanding,

7

Adopts R & R, remands "for further proceedings consistent with the R&R."

8

Entered March 11, 2013, AR 1137.

9

10

4.  Second Hearing Before ALJ Robert P. Kingsley:

Date of Hearing: October 29, 2013; video hearing transcript AR 1023-1049

11

Date of Decision: February 26, 2014

12

Appears in Record at:  AR 984-1007

13

Summary of Decision:

14
15
16

Claimant has not engaged in substantial gainful activity since his alleged onset date.  He has severe impairments of schizoaffective disorder, depressed type; and osteoarthritis of the left knee.  His impairments, even in combination, do not qualify under the Listings.  [This is the same as in the first ALJ decision, except the ALJ has stricken, "rule out post-traumatic stress disorder."]

17
18
19
20

As to Plaintiff's credibility, he has not been candid when asked about his condition or treatment.  Several of his treating professionals commented that he was not a very reliable historian.  Several have noted questionable validity of his test results, and suggested the possibility of malingering and that his MMPI testing revealed a profile of a person that was "deliberately trying to avoid answering questions frankly and honestly."  AR 990, referring to AR 716.  He has made inconsistent statements about whether he served in combat, and about childhood abuse, his education, substance abuse, and whether he rides the bus.  All of this evidences an intent to mislead for secondary gain.

21
22
23

His physical allegations are inconsistent with his treatment record.  He can walk extended distances, and is a skilled dancer.  His treatment records, and particularly the more recent ones, are also inconsistent with his allegations of mental impairments.  "The record does not demonstrate significant symptoms of psychotic behavior or depression that would prevent the claimant from

24

REPORT AND RECOMMENDATION - 4

1

performing work within the bounds of [the RFC determined by the ALJ]." AR 992.

2

3

[See the "Discussion" below for a summary and analysis of the ALJ's reasons, in reaching his second decision, for the amount of weight he assigned to the opinions of Drs. Morris, Bragg, Trowbridge, Mee, and Fligstein, and to the opinions of NP Fraley]

4

5

Plaintiff has the RFC to perform light work, subject to certain limitations.  He cannot climb ladders, ropes, or scaffolds.  He can do occasional kneeling or crawling; and frequent climbing of ramps or stairs, balancing, stooping and crouching.  He must avoid concentrated exposure to cold and hazards.  He is limited to simple, routine, and repetitive tasks with only one to two steps.  He can have occasional contact with co-workers and supervisors, but no contact with the public.  He can have few, if any, changes in the work setting.  He can perform no tasks involving a manufacturing-style production pace.[This is the same as the RFC in the first ALJ decision]

6

7

8

9

He cannot perform his past relevant work, which was as a Material Handler.  The testimony of the Vocational Expert identified examples of three jobs Plaintiff can perform: Room Cleaner, Mailroom Clerk, and Café Attendant.  This establishes he can perform substantial work which exists in the national economy, and requires a finding of "not disabled."  [This is the same finding as in the ALJ's first decision].

10

11

12

13

Jurisdiction based upon: 42 U.S.C. § 405(g)

14

Brief on Merits Submitted by (X) Plaintiff  (X) Commissioner

15

16

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

17

(X)  Reverse, Remand for Payment of Benefits

18

19

SUMMARY OF RECOMMENDATION

20

In his second decision, the ALJ has again failed to state specific and legitimate reasons

21

for attaching little or no weight to the opinions of Drs. Morris, Bragg, Trowbridge, Fligstein

22

and Mee.  However, in support of his decision to give little weight to the opinions expressed by

23

NP Barbara Fraley, a lay witness, the ALJ has stated germane reasons specific to that witness.

24

REPORT AND RECOMMENDATION - 5

1  The ALJ has also amply documented his finding that Plaintiff's own statements are entitled to

2  very little credibility.

3        The opinions of the five doctors in question, together with the balance of the record,

4  establish that Plaintiff is disabled.  The administrative record is complete, and no purpose

5  would be served by ordering any further administrative proceedings.  The court should exercise

6  its discretion to reverse, remand, and order the payment of benefits.

7

8                                                          DISCUSSION

9        Despite the protracted history of this case and the voluminous administrative record of
   over 1660 pages, the issues before this court are relatively simple:

10

11            1.  Do the new statements of reasons by the ALJ cure the defects identified in
                   Judge Tsuchida's R&R?

12            2.  If not, what is the proper remedy?

13        Judge Tsuchida, in his R & R, set forth in some detail the tests and interviews

14  conducted by each of the five doctors at issue; the opinions and conclusions they reached; the

15  ALJ's stated reasons in his first decision for giving little or no weight to those opinions and

16  conclusions; the legal standards by which the ALJ's reasons are to be measured; and why those

17  reasons were not sufficient.  The court and parties can and should refer to Judge Tsuchida's

18  R&R, at the pages cited, for this crucial material.  It will not be fully repeated in what follows,

19  but only briefly summarized.

20        The material set forth below focuses primarily upon a description of any new or revised

21  reasons the ALJ has added in his second decision; and recommendations as to whether those

22  reasons, as revised, are now legally sufficient.

23        **A.  Amy Morris, Ph.D.**   (R&R, at AR. 1119-23)

24

REPORT AND RECOMMENDATION - 6

1    Dr. Morris, Plaintiff's treating psychologist, administered a battery of objective

2    psychological tests, in addition to interviewing Plaintiff.  She diagnosed Plaintiff with

3    schizoaffective disorder, depressed type, and assigned him a Global Assessment of

4    Functioning score of 30. AR 693.  In his first decision, the ALJ did not give any reasons to

5    reject Dr. Morris's clinical findings or functional assessment.  The ALJ did challenge whether

6    GAF scores generally are particularly meaningful or helpful.  He also found that the Plaintiff's

7    score is unreliable because his statements to Dr. Morris had little credibility.

8    The R&R found the ALJ had not stated specific, legitimate reasons for rejecting Dr.

9    Morris's opinions. *Lester v. Chater*, 81 F.3d 821, 830 (1996). First, her opinions, including her

10   determination of his GAF level, were based upon far more than Plaintiff's subjective

11   statements to her.  They were also based upon the battery of tests she administered, the mental

12   status exams she conducted, and other facts.  This led to Dr. Morris's conclusions that Plaintiff

13   functions at a chronically low level, has difficulty coping with the requirements of everyday

14   living, and navigating complex systems.  Second, contrary to the ALJ's sweeping dismissal of

15   GAF scores generally, Ninth Circuit cases have held that GAF scores are relevant evidence of

16   a claimant's ability to function mentally. *Garrison v. Colvin*, 759 F.3d 995, 1003, n. 4 (9th Cir.

17   2014).

18   In his second decision, the ALJ stated some additional reasons for rejecting Dr.

19   Morris's opinions and conclusions. AR 1003-04.  The court should find, however, that these

20   reasons add little or nothing of value to the reasons stated in the first decision.

21   The ALJ deprecated Dr. Morris's opinions because they were given in a therapeutic

22   context, rather than as an assessment of functionality in the workplace.  This novel argument is

23   directly contrary to the fact that the opinions of treating physicians are given the greatest

24   weight – greater than that given to the opinions of examining or reviewing physicians. *Lester*,

REPORT AND RECOMMENDATION - 7

1   81 F.3d at 830.  The ALJ again emphasizes the unreliability of Plaintiff's statements to Dr.

2   Harris and to others, including statements made after Dr. Harris's report.  "But an ALJ does

3   not provide clear and convincing reasons for rejecting an examining physician's opinion by

4   questioning the credibility of the patient's complaints where the doctor does not discredit those

5   complaints and supports his ultimate opinion with his own observations." *Ryan v. Comm'r of*

6   *Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008). The ALJ emphasized this fact in his first

7   decision, which the court has held did not state legitimate reasons for rejecting Dr. Harris's

8   opinions.  The ALJ's second decision adds little or nothing in this respect.  The ALJ also

9   points out that Plaintiff stopped treatment with Dr. Harris shortly after her report was written,

10  "which prevented Dr. Morris from gaining a better understanding of the claimant's

11  functioning…."  AR.  1003.  But the ALJ does not specify what information came out later

12  which might have caused Dr. Morris to change her view, or which might provide the ALJ a

13  legitimate basis for rejecting Dr. Morris's views.

14  In sum, the ALJ's second decision does not cure the failure of his first decision to state specific

15  legitimate reasons for rejecting Dr. Morris's opinions and conclusions.

16        **B.    Russell Bragg, Ph.D., and Brett Trowbridge, Ph.D.** (R&R, at AR. 1123-25).

17        Dr. Bragg tested Plaintiff in March of 2010, and found his condition "very severe" on

18  scales for depression, anxiety and hopelessness.  He found that Plaintiff  "… does not appear

19  capable of working at the present time due to the presence of significant psychiatric symptoms,

20  in spite of the use of multiple medications." AR 505.  He assigned Plaintiff a GAF score of 35.

21  AR 507.  (See the R&R and Dr. Bragg's report for a more complete statement of his findings).

22        Dr Trowbridge examined Plaintiff in January of 2010.  He diagnosed schizoaffective

23  disorder, and found marked limitations in a number of respects, including the ability to

24

REPORT AND RECOMMENDATION - 8

1   maintain appropriate behavior in a work setting.  AR 910.  He found Plaintiff to be chronically

2   mentally ill, and assigned a GAF score of 45.  AR 909.

3        The ALJ, in his first decision, rejected the opinions of these doctors because they relied

4   heavily on the subjective reports of symptoms and limitations provided by the claimant, and

5   because the totality of the evidence is inconsistent with this opinion. AR 19-20. The R&R

6   ruled these were not specific and legitimate reasons.  Much of the evidence on alleged mental

7   impairments will be based upon the patient's subjective reporting.  But in addition, these

8   doctors also based their opinions on other factors, including mental status examinations,

9   testing, observations, and their own professional judgment. AR 503-5, 909-921.  Also, Dr.

10  Bragg's report indicates he was well aware that Plaintiff's statements were highly suspect. AR

11  502. In addition, the ALJ's invocation of "the totality of the evidence" is not sufficiently

12  specific to support rejection of these opinions.

13       In his second decision, the ALJ stated that Dr. Bragg's opinions and conclusions were

14  "tentative;" and that Dr. Bragg had not been aware of the nature or extent of Plaintiff's

15  misstatements of fact, and lack of credibility. AR 1002. As to the "tentative" nature of Dr.

16  Bragg's findings, he did include some "rule out" portions of his diagnosis, including PTSD,

17  alcohol dependence, and agoraphobia.  AR 506.  But the ALJ did not include any of these in

18  Plaintiff's list of impairments.  There was nothing tentative about the other portions of Dr.

19  Bragg's diagnosis.  The "rule out" portions of the diagnosis have no relevance as Plaintiff is

20  disabled by virtue of the impairments diagnosed without any qualification. The ALJ's

21  emphasis in the second decision upon Plaintiff's lack of credibility is basically a reprise of the

22  reasons which he presented in first decision, and which the court rejected.

23

24

1      The ALJ's second decision addresses Dr. Trowbridge's only briefly. AR 1004.  The

2  ALJ's additional reasons are virtually identical to those he states for Dr. Bragg's report, and

3  similarly fail to state specific legitimate reasons.

4      In sum, the ALJ's second decision does not cure the failure of his first decision to state

5  specific and legitimate reasons for rejecting the opinions and conclusions of Drs. Bragg and

6  Trowbridge.

7      **C.   Diane Fligstein, Ph.D., and Sean Mee, Ph.D.** (R&R, at AR. 1125-27)

8      These state agency psychologists reviewed the record.  Dr. Fligstein concluded that

9  Plaintiff was "moderately limited" in many aspects relating to his ability to work. AR 76. But

10  she opined, "Claimant should work where he is able to receive adequate breaks to reduce stress

11  that might interfere with his [concentration, persistence and pace]."  AR 89.  Dr. Mee stated

12  essentially the same opinion.  AR 104, 117.

13      The ALJ did not include, in the RFC, any specific requirement for "breaks."  The ALJ

14  rejected the opinions of Drs. Fligstein and Mee that Plaintiff's impairments added a

15  requirement for any breaks other than those "customary."  The ALJ's reasons in his first

16  decision were that the opinions were made without benefit of more recent evidence; and the

17  doctors' concern is addressed by the RFC formulated by the ALJ, which limits Plaintiff to

18  simple, routine and repetitive tasks with only one or two steps, with no tasks requiring a

19  manufacturing style production pace.  AR 20-21. The R&R found these reasons were not

20  specific and legitimate.  The ALJ had not identified *what* more recent evidence was

21  inconsistent with the doctors' opinions.

22      In his second decision, the ALJ added just one new reason for rejecting these doctors'

23  opinions: "Both opinions on breaks are somewhat vague on whether the claimant would

24  require more than the customary breaks generally allowed."  AR  1005.  But this is not a

REPORT AND RECOMMENDATION - 10

1 specific and legitimate reason for rejecting the opinion of these two doctors that Plaintiff's

2 impairments impose a specific need for work breaks.  In the absence of supporting evidence,

3 the ALJ may not assume that "customary breaks generally allowed" would meet this need.

4

  **D. Barbara Fraley, NP**

5

6   In brief summary, the ALJ's second decision *did* state germane reasons, specific to this

witness, for rejecting the opinions of NP Fraley. *Turner v. Comm'r of Soc.Sec. Admin.*, 613 F.

7

3d 1217, 1224 (9th Cir. 2010). The standard for rejecting the opinions of a lay witness, of

8

course, is lower than that for medical opinions. The ALJ points out that NP Fraley did not have

9

available to her extensive evidence of plaintiff's ability to perform many functions; and the

10

evidence that NP Fraley relied upon many misrepresentations of fact by Plaintiff.  AR 996-97.

11

This was sufficient.

12

13

  **E. Plaintiff's Credibility**

14   The ALJ, in his second decision, has amply documented his finding that Plaintiff's

15 statements are entitled to very limited credibility.  AR 989-94.  As discussed above, however,

16 that poor credibility does not provide a specific and legitimate reason for rejecting the opinions

17 and conclusions of the five doctors.  *See Ryan*, 528 F.3d at 1199-1200.

18 <u>**Appropriate Relief**</u>

19   Because the ALJ has again not stated specific and legitimate reasons for rejecting the

20 opinions of the five doctors, this court must again reverse, and remand the case.  Remaining for

21 decision is whether the court should order the payment of benefits, or should direct a third

22 round of administrative proceedings.  This choice of remedy is within the discretion of the

23 court. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). A remand for award of benefits

24

REPORT AND RECOMMENDATION - 11

1    is appropriate when each part of the three-part credit-as-true standard is satisfied. *Garrison*,

2    759 F.3d at 1020.  The requirements are:

3    (1) the record has been fully developed and further administrative proceedings
     would serve no useful purpose; (2) the ALJ has failed to provide legally

4    sufficient reasons for rejecting evidence, whether claimant testimony or medical
     opinion; and (3) if the improperly discredited evidence were credited as true, the

5    ALJ would be required to find the claimant disabled on remand.

6    *Id*.

7    Here, the testimony of these five doctors, if credited, would establish that plaintiff's

8    mental impairments, along with his physical impairments, prevent him from performing

9    substantial gainful employment.  Despite a prior decision, which was reversed, a second

10   hearing on remand, and a second ALJ decision, the ALJ has still failed to state specific and

11   legitimate reasons for rejecting the opinions of these doctors.  The administrative record is

12   fully developed, and no further proceedings are necessary to develop that record. There is

13   therefore no persuasive reason to remand this case for further administrative proceedings, and

14   there are strong reasons not to do so.  A remand with directions to pay benefits is the

15   appropriate remedy. *Ghokassian v. Shalala*, 41 F.3d 1300, 1304 (9th Cir. 1994); *Pitzer v.*

16   *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).

17

18                                              CONCLUSION

19   For the foregoing reasons, the Court recommends that the ALJ's most recent decision

20   in this case be REVERSED, that the case be REMANDED, and that the Commissioner be

21   DIRECTED TO PAY BENEFITS.  A proposed order accompanies this Report and

22   Recommendation.

23   Objections to this Report and Recommendation, if any, must be filed with the Clerk

24   and served upon all parties to this suit no later than fourteen (14) days after the date on which

REPORT AND RECOMMENDATION - 12

this Report and Recommendation is signed. If no timely objections are filed, the Clerk shall note this matter for the earliest Friday after the deadline for objections, as ready for the Court's consideration. Failure to file objections within the specified time may affect the parties' right to appeal. If objections are filed, any response is due within fourteen (14) days after being served with the objections. A party filing an objection must note the matter for the court's consideration fourteen (14) days from the date the objection is filed and served. Objections and responses shall not exceed twelve pages.

DATED this 18th day of December, 2014.

JOHN L. WEINBERG
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13